Casie D. Collignon (*Pro Hac Vice Forthcoming*)
*ccollignon@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Telephone:  303.861.0600
Facsimile:  303.861.7805

Sean P. Killeen (SBN 320644)
*skilleen@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone:  415.659.2600
Facsimile:  415.659.2601

*Attorneys for Defendant*
WISNER BAUM, LLP

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA HARTMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WISNER BAUM, LLP<br><br>Defendant. | Case No.: 2:26-cv-01017-SVW-AS<br><br>**DEFENDANT WISNER BAUM, LLP'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>*[Filed concurrently with [Proposed] Order; Declaration of Sean P. Killeen; and Declaration of David Schmalz]*<br><br>Date:  June 22, 2026<br>Time:  1:30pm<br>Ctrm:  10A<br>Judge:  Hon. Stephen V. Wilson<br><br>Action Filed: April 3, 2026 |
| MATTHEW RUTLEDGE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v. | Case No.: 2:26-cv-01033 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WISNER BAUM, LLP

    Defendant.

ERIC DENNEY, individually and on behalf of all others similarly situated,

    Plaintiff,

    v.

WISNER BAUM, LLP

    Defendant.

Case No. 2:26-cv-01075

MAX WINER, individually and on behalf of all others similarly situated,

    Plaintiff,

    v.

WISNER BAUM, LLP

    Defendant.

Case No. 2:26-cv-01157

RAFAEL HERNANDEZ, on behalf of his child D.H. and on behalf of all others similarly situated,

    Plaintiff,

    v.

WISNER BAUM, LLP

    Defendant.

Case No. 2:26-cv-01527

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE HONORABLE COURT, PLAINTIFF, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 22, 2026, at 1:30 P.M. in Courtroom 10A on the 10th floor of the above-entitled Court located at 350 W 1st Street, Suite 4311, Los Angeles, CA 90012-4565, Wisner Baum, LLP ("Wisner") will and hereby does move for an order dismissing, with prejudice, Plaintiffs Donna Hartman, Matthew Rutledge, Eric Denney, Max Winer, Julia Wieand, and Rafael Hernandez's Class Action Complaint (the "Motion").

This Motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack Article III standing and have failed to state a claim upon which relief may be granted. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Sean P. Killeen, the Declaration of David Schmalz, the pleadings and papers on file in this Action, any oral argument of counsel, and upon such other evidence and matters that may be presented to the Court at or before any hearing on the Motion.

As required by this Court's Standing Order, counsel for the parties met and conferred on April 27, 2026 regarding this Motion and exhausted all attempts at resolution without the need for filing this Motion. *See* Declaration of Sean P. Killeen ("Killeen Decl.") ¶ 2.

Dated: May 4, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Sean P. Killeen*
Casie D. Collignon
Sean P. Killeen

Attorneys for Defendant
WISNER BAUM, LLP

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES................................................1

I.    INTRODUCTION................................................1

II.   BACKGROUND................................................2

III.  LEGAL STANDARDS................................................3

IV.   ARGUMENT ................................................4

    A.    Plaintiffs Lack Article III Standing................................................4

        1.    Plaintiffs Fail to Plausibly Plead an Injury-in-Fact...................4

            a.    Lost Time and Monitoring Costs .......................................5

            b.    Emotional Distress .......................................7

            c.    Increased Risk of Future Harm .......................................7

            d.    Diminution of PII .......................................8

            e.    Loss of Privacy.......................................8

            f.    Increase in Spam .......................................9

        2.    Plaintiffs Have Not Experienced Any Injury-in-Fact That is Fairly Traceable to Wisner's Conduct................................................10

    B.    Plaintiffs Fail to State a Claim under Rule 12(b)(6)................................................12

        1.    Plaintiffs Fail to Establish Proximate Cause ...........................12

        2.    Plaintiffs' Negligence and Negligence Per Se Claims Fails ....12

            a.    Plaintiffs Fails to Allege Cognizable Injury...................13

            b.    Economic Loss Rule.......................................13

            c.    The Failure to Timely Disclose Theory Does Not Save the Claim.......................................14

        3.    Plaintiffs Fail to State Claims for Breach of Implied Contract and Implied Covenant of Good Faith and Fair Dealing.......................................15

        4.    Plaintiffs Fail to State a Claim for Violating the UCL.............16

            a.    Plaintiffs Lack UCL standing.......................................16

i

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

b.    Plaintiff Fails to Establish Lack of an Adequate Remedy at Law.................................................17

5.    Plaintiffs Fail to State a Claim for Violation of the CCPA......18

a.    Wisner is Not a "Business" under the CCPA.................18

b.    Plaintiffs Fail to Plausibly Plead Necessary Allegations.................................................................20

6.    Plaintiffs Fail to State a Claim for Violating the CRA.............21

V.    CONCLUSION .......................................................................................22

C.D. CAL. L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ...............................23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aguilar v. Hartford Accident & Indem. Co.*,
No. CV 18-8123-R, 2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ................... 9

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ................................................................. 13

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009) ................................................................. 14

*Anderson v. Kimpton Hotel & Rest. Group, LLC*,
No. 19-cv-01860-MMC, 2019 WL3753308 (N.D. Cal. Aug. 8,
2019) ............................................................................................................ 20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 3, 4

*Ass'n of Am. Med. Coll. v. United States*,
217 F.3d 770 (9th Cir. 2000) ....................................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 3, 4

*C. M. v. MarinHealth Med. Grp., Inc.*,
No. 23-CV-04179-WHO, 2024 WL 217841 (N.D. Cal. Jan. 19,
2024) ............................................................................................................ 8

*Chandler v. State Farm Mut. Auto Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ..................................................................... 3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................. 3, 4, 6

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
2017 WL 1551330 (S.D. Ill. May 1, 2017) ................................................. 14

*Corona v. Sony Pictures Ent., Inc.*,
2015 WL 3916744 (C.D. Cal. June 15, 2015) ................................. 6, 7, 8, 9, 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
No. 3:16-cv-000140GPC-BLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ........................................................................................................21

*Flores-Mendez v. Zoosk, Inc.*,
No. C 20-04929 WHA, 2021 WL 4553772 (N.D. Cal. Oct. 5, 2021) ..............17

*Gardiner v. Walmart Inc.*,
No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................................................................................17

*Gibson v. Jaguar Land Rover N. Am., LLC*,
No. CV 20-00769-CJC, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ........................................................................................................17

*Greenstein v. Noblr Reciprocal Exch.*,
No. 4:21-cv-04537-JSW, 2022 WL 17418972 (N.D. Cal. Dec. 5, 2022) ........................................................................................................10

*Griffey v. Magellan Health Inc.*,
562 F.Supp. 3d 34 (D. Ariz. 2021) ................................................................20

*Holly v. Alta Newport Hosp., Inc.*,
612 F. Supp. 3d 1017 (C.D. Cal. 2020) ............................................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........................................................................................3

*Krottner v. Starbucks Corp.*
406 F.App'x 129 (9th Cir. 2010) ....................................................................15

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) ..........................................................................6

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) ..........................................................................3, 4, 10, 11

*Maag v. U.S. Bank, Nat'l Ass'n*,
No. 21-CV-00031-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ........................................................................................................20

*Madrigal v. Hint, Inc.*,
No. CV 17-02095-VAP, 2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ........................................................................................................18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

*Magadia v. Walmart*,
   999 F.3d 668 (9th Cir. 2021) ........................................................................... 4

*McCarthy v. United States*,
   850 F.2d 558 (9ᵗʰ Cir. 1988) ............................................................................ 3

*Medoff v. Minka Lighting, LLC*,
   No. 222CV08885SVWPVC, 2023 WL 4291973 (C.D. Cal. May 8,
   2023) .................................................................................................................. 6

*Ortiz v. Perkins & Co.*,
   No. 22-cv-03506-KAW, 2022 WL 16637993 (N.D. Cal. Nov. 2,
   2022) ............................................................................................................ 11, 12

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) ........................................................................... 4

*Pruchnicki v. Envision Healthcare Corp.*,
   439 F. Supp. 3d 1226 (D. Nev. 2020), aff'd, 845 F. App'x 613 (9th
   Cir. 2021) ........................................................................................................... 6

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ................................................................... 13

*Rubio v. Cap. One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ....................................................................... 16

*Schertz v. Ford Motor Co.*,
   No. CV 20-03221 TJH, 2020 WL 5919731 (C.D. Cal. July 27,
   2020) ................................................................................................................ 17

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft
Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) ..................................................................... 8

*Sion v. SunRun, Inc.*,
   No. 16-CV-05834-JST, 2017 WL 952953 (N.D. Cal. Mar. 13,
   2017) .................................................................................................................. 7

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ......................................................................... 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. Oct. 11, 2012) ............................................ 7, 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014), *order corrected*, No.
   11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10,
   2014) .................................................................................................................. 13

*Tamraz v. Bakotic Pathology Assocs., Inc.*,
   No. 22-cv-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov.
   16, 2022) ........................................................................................................... 17

*Travis v. Assured Imaging, LLC*,
   No. CV-20-00390-TUC-JCH, 2021 WL 1862446 (D. Ariz. May 10,
   2021) .................................................................................................................... 9

*In re Waste Mgmt. Data Breach Litig.*,
   No.21CV6147 (DLC), 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ........... 20, 21

*Yunker v. Pandora Media, Inc.*,
   No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26,
   2013) ................................................................................................................... 14

**State Cases**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...................................................................................... 16

*Evan F. v. Hughson United Methodist Church*,
   10 Cal. Rptr. 2d 748 (Cal. Ct. App. 1992) ....................................................... 13

*Fields v. Napa Mill. Co.*,
   164 Cal. App. 2d 442 (1958) ............................................................................... 7

*Salami v. Los Robles Reg'l Med. Ctr.*,
   103 Cal. App. 5th 1023 (2024) .......................................................................... 15

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................ 16

Cal. Civ. Code § 1798.80(c) .................................................................................. 21

Cal. Civ. Code § 1798.82 ....................................................................................... 18

Cal. Civ. Code § 1798.140(ag) .............................................................................. 19

Cal. Civ. Code § 1798.140(d) ................................................................................ 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

Cal. Civ. Code § 1798.150 ...................................................................2, 18, 19, 20

Cal. Civ. Code § 1798.150(a)(1) ........................................................................ 18

Cal. Civ. Code § 1798.80 et seq. ...........................................................................2

Cal. Bus. & Prof. Code § 17200 et seq. ...............................................................2

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ...............................................................................3, 4, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................3, 12, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-01017- SVW-AS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     <u>INTRODUCTION</u>

Wisner Baum, LLP ("Wisner") is a Los Angeles law firm known for representing clients nationwide in catastrophic personal injury and wrongful death cases resulting from defective products, pharmaceuticals, and major transportation accidents. On October 9, 2025, Wisner identified and began addressing a cybersecurity incident that involved unusual activity within its network (the "Data Incident"). *See* Declaration of David Schmalz ("Schmalz Decl.") ¶ 5.

Wisner's investigation determined that the earliest evidence of threat actor activity in the Wisner network environment occurred on the SonicWall VPN on October 8, 2025. *Id*. On September 17, 2025, SonicWall disclosed a security incident that resulted in the exposure of a limited scope of cloud backup credentials and time based one-time password (TOTP) seeds, which did not include disclosure about any risk to Wisner's cloud backups. *Id*. ¶ 4. On October 8, 2025, SonicWall revised the scope and confirmed that all cloud backups and TOTP seeds were compromised in its data security incident. *Id.* Wisner's investigation revealed that the earliest evidence of threat actor activity in the Wisner network environment occurred on the SonicWall SSL VPN on October 8, 2025. *Id.* ¶ 5. At that time, the threat actor successfully authenticated to the SSL VPN using a valid account and password compromised in the SonicWall data security incident. *Id*. There was no evidence of brute-force login attempts involving the impacted user accounts, and the Wisner TOTP Multi-factor authentication (MFA) was satisfied during authentication attempts. *Id.*

Those facts matter here not because the Court must resolve the precise technical pathway at the pleading stage, but because Consolidated Class Action Complaint ("CCAC") pleads none of it—offering only the conclusion that Wisner's "inadequately protected" network was "infiltrated." CCAC ¶¶ 2, 6. Rule 12 does not allow Plaintiffs to proceed on conclusions divorced from well-pleaded facts.

As was required by state law, Wisner mailed notification letters via First-Class mail to the potentially affected individuals and offered one year of complimentary credit monitoring and proactive fraud assistance services. Plaintiffs then brought lawsuits merely based on the notification, and nothing more. Plaintiffs allege no facts about how the Data Incident occurred, what security measure by Wisner allegedly failed, or how any alleged shortcoming by Wisner caused any Plaintiff's alleged harm. Nor could they allege any such facts. Here, Wisner had encryption in the form of multifactor authentication, but it was simply unaware that its vendor's vendor had had a prior data security incident that put Wisner's valid credentials and security measures at risk. Plaintiffs cannot plead around the intentional gaps in their Complaint merely by labeling the incident "preventable" and the network "under-protected." CCAC ¶¶ 2, 6.

Further, even if these vague pleadings were sufficient, Plaintiffs have not pled any specific facts to show either that they were injured in any concrete manner or that the injury was caused by Wisner, as opposed to SonicWall's data security incident. The Court should dismiss the CCAC in its entirety under Rules 12(b)(1) and 12(b)(6).

## II.    BACKGROUND

Plaintiffs filed their CCAC on April 3, 2026. Plaintiffs allege that Wisner failed "to properly secure and safeguard Representative Plaintiffs' and/or Class Members' personally identifiable information stored within [Wisner's] information network." CCAC ¶ 1. Plaintiffs sue on behalf of themselves and a putative class of individuals whose personal information was allegedly impacted in the Data Incident, asserting: (i) negligence, (ii) breach of implied contract, (iii) breach of implied covenant of good faith and fair dealing, (iv) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (v) violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150, and (vi) violation of the California Customer Records Act ("CRA"), Cal. Civ. Code § 1798.80 et seq. CCAC ¶¶ 139–202.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

Plaintiffs propose a Nationwide Class comprised of "[a]ll individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before October 9, 2025." CCAC ¶ 80. Plaintiffs also propose a California Subclass comprised of "[a]ll individuals within the State of California whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before October 9, 2025." CCAC ¶ 80.

## III.   LEGAL STANDARDS

Under Rule 12(b)(1), Plaintiff bears the burden of establishing that the court has subject matter jurisdiction to hear an action in federal court. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000). Subject matter jurisdiction is absent where a plaintiff lacks Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, Plaintiff must prove that she suffered an "injury in fact," i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). When considering a Rule 12(b)(1) motion, the court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Under Rule 12(b)(6), dismissal is appropriate where a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted

- 3 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

unlawfully." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level…." *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

## IV.   ARGUMENT

### A.    Plaintiffs Lack Article III Standing

Article III standing is a jurisdictional prerequisite. Plaintiffs therefore must allege a concrete injury in fact that is fairly traceable to Wisner's conduct and likely to be redressed by the relief they seek. *See Clapper*, 568 U.S. 398 at 408; *Lujan*, 504 U.S. at 560–61. They do not. The CCAC pleads no non-speculative injury tied to this Data Incident, let alone any injury fairly traceable to Wisner's conduct. And it offers only conclusory assertions of misuse as to the lone Plaintiff who tries to allege it. Because Plaintiffs have not carried their burden to plead standing, the Court should dismiss under Rule 12(b)(1).

#### 1.    *Plaintiffs Fail to Plausibly Plead an Injury-in-Fact*

To establish an injury in fact, Plaintiffs must allege a harm that is concrete and actual (or at least imminent), not conjectural. *Magadia v. Walmart*, 999 F.3d 668, 674 (9th Cir. 2021). The CCAC does not plead such a harm.

Plaintiff Winer is the only Plaintiff who even attempts to allege actual misuse. He alleges that, since the Data Incident, he was "notified" that his Social Security number and certain personal information were for sale on the dark web. CCAC ¶ 56. He also claims that he purchased comprehensive data monitoring and identity theft insurance, placed freezes on his credit report, and that his credit card information was "recently compromised." CCAC ¶ 56.

Critically, Plaintiff Winer pleads no facts explaining the basis for his allegation

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

about this alleged "notification" (e.g., who notified him, when, through what source, what was allegedly listed, or how any listing was linked to Wisner). "Notified" is a conclusion, not a fact. The allegation is also in tension with the CCAC's earlier, more qualified assertion that, "on information and belief," Winer's information "has already been published, or will be published imminently," on the dark web. CCAC ¶ 54. In short, the pleading alternates between a conclusory statement of present fact and a speculative allegation framed on information and belief, without factual detail to support either characterization.

Plaintiff Winer also alleges that he paid for data monitoring and identity theft insurance. CCAC ¶ 56. That allegation is difficult to square with the notification letter's offer of one year of complimentary credit monitoring. He does not explain why duplicative services were reasonably necessary, nor does he identify what services he purchased or how much he allegedly paid.

Finally, Plaintiff Winer alleges that his credit card information was "recently compromised," but pleads no facts to support that assertion. CCAC ¶ 56. He does not allege fraudulent charges, financial loss, unreimbursed liability, or any other out-of-pocket damage.

Outside of Plaintiff Winer's allegations, the CCAC generally alleges that Plaintiffs and the putative class have been injured in the following ways: (1) lost time and monitoring costs; (2) emotional distress; (3) increased risk of future harm; (4) diminution of personal identifying information ("PII"); (5) invasion of privacy; and (6) increase in spam. CCAC ¶¶ 11–76. None of these generic allegations save this CCAC for any Plaintiff.

### a.    Lost Time and Monitoring Costs

Plaintiffs Hartman, Rutledge, Denney, Wieand, and Hernandez allege lost time dealing with the consequences of the Data Incident; they do not allege any actual or suspected misuse of their unspecified data, nor do they allege any out-of-pocket losses. CCAC ¶¶ 16, 26, 36, 46, 73. But without any "tangible, out-of-pocket

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -

expenses," time spent obtaining credit reports, reviewing financial accounts, or otherwise attempting to mitigate a potential, future injury is not cognizable injury. *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020), aff'd, 845 F. App'x 613 (9th Cir. 2021) ("[T]he court finds that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages"); *see also Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at * 4 (C.D. Cal. June 15, 2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury.").

Plaintiff Winer similarly fails to allege a cognizable injury. Although he claims to have purchased credit monitoring and identity theft insurance, he did so after Wisner expressly informed him that he would receive one year of complimentary credit monitoring. CCAC ¶ 56. He offers no explanation for why duplicative services were reasonably necessary, nor does he identify what services he purchased or how much he allegedly paid. Plaintiff's allegations underscore this point. He contends that he was damaged by time and money spent on credit monitoring, yet if that monitoring was meaningful and capable of detecting harm, Plaintiff should be able to allege when any misuse was actually discovered as a result of those efforts. He does not do so. The Ninth Circuit has held that an injury in fact may be found from mitigation costs only if the risk of identity theft is "real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010). The Supreme Court and Ninth Circuit have made clear that a plaintiff cannot "manufacture standing merely by inflicting harm on [himself] based on . . . fears of hypothetical harm that is not certainly impending." *Clapper*, 568 U.S. 398 at 416. Any speculative time or costs spent safeguarding accounts are self-imposed responses to a conjectural risk and thus not cognizable injuries. *Medoff v. Minka Lighting, LLC*, No. 222CV08885SVWPVC, 2023 WL 4291973, at *5 (C.D. Cal. May 8, 2023). Accordingly, Plaintiff Winer's alleged mitigation expenses reflect nothing more than a voluntary response to a speculative risk and therefore fail to

- 6 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

establish a cognizable injury in fact.

b.    Emotional Distress

Plaintiffs claim to have experienced anxiety in connection with the Data Incident. CCAC ¶¶ 19, 29, 39, 49, 58, 74. While under California law "actual damages can include emotional distress," a Plaintiff "must support [her] claim for pain and suffering with something more than [her] own conclusory allegations, such as specific claims of genuine injury." *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026 (C.D. Cal. 2020) (citing *Sion v. SunRun, Inc.*, No. 16-CV-05834-JST, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017)). Here, Plaintiffs simply allege that the Data Incident caused them to have anxiety. CCAC ¶¶ 19, 29, 39, 49, 58, 74. But this generic allegation is "too sparse and conclusory" to support Plaintiffs' claims for damages absent "specific facts about how [plaintiff] suffered those damages." *Sion*, 2017 WL 952953, at *2.

c.    Increased Risk of Future Harm

Plaintiffs' generic allegations of the increased risk of identity theft and fraud are far too speculative to constitute actual injury. CCAC ¶¶ 20, 30, 40, 50, 61. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. Oct. 11, 2012). In fact, "[i]t is fundamental that a negligent act is not actionable unless it results in injury to another." *Fields v. Napa Mill. Co.*, 164 Cal. App. 2d 442, 447 (1958). For that reason, California courts "have indicated that speculative harm or the mere threat of future harm is insufficient to constitute actual loss." *Corona*, 2015 WL 3916744, at *3.

Plaintiff Winer's allegations do not change this analysis. CCAC ¶ 56. His claim that his information appeared on the dark web is unsupported by any detail and the tenuous nature of these allegations are highlighted by the fact that they are made only "on information and belief," reflecting uncertainty rather than actual misuse. CCAC ¶ 54. And his conclusory assertion that his credit card information was compromised is unaccompanied by allegations of fraudulent charges, financial loss,

- 7 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

or other tangible consequences. At most, Plaintiff Winer pleads apprehension about possible future misuse of his information and it is therefore insufficient to find injury in fact for purposes of standing.

### d.   Diminution of PII

Plaintiffs claim they and the putative class members were damaged by the alleged theft and related loss of value of their PII, essentially claiming a property interest in their PII. CCAC ¶¶ 17, 27, 37, 47, 60. But California courts have already rejected this theory. *Corona*, 2015 WL 3916744, at *4 (rejecting claims based on diminution because "Plaintiffs have not provided any authority that an individual's personal identifying information has any compensable value in the economy at large.").

Furthermore, courts have routinely rejected the "loss of value in PII" theory of injury when plaintiffs do not "contend that they intended to sell this information on the cyber black market in the first place" and do not provide any facts as to "whether or how the data has been devalued by the breach." *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.* ("SAIC"), 45 F. Supp. 3d 14, 30 (D.D.C. 2014). Plaintiffs must allege facts that demonstrate their intent to sell their PII, but here Plaintiffs only allege the existence of dark web black markets for PII trading. CCAC ¶123. Plaintiffs cannot simultaneously argue they want no one to have access to their PII but then allege that they "intended to participate in this market, or otherwise to derive economic value from [her] PII." *C. M. v. MarinHealth Med. Grp., Inc.*, No. 23-CV-04179-WHO, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024).

### e.   Loss of Privacy

Plaintiffs also claim that they and the putative class members were damaged by a loss of privacy because of the potential use of their information by cybercriminals. CCAC ¶ 19, 29, 39, 49, 59. But again, Plaintiffs do not allege that they or members of the putative class suffered any identity theft or fraudulent charges as a result of the Data Incident. Plaintiffs' argument is essentially their conclusory

- 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

claim that their PII has been accessed by a third party, which is insufficient to allege damages. *Corona*, 2015 WL 3916744, at *4. But "the loss of privacy engendered by an accidental data breach cannot satisfy the necessary damage element of a negligence claim, 'without specific factual statements that [Plaintiff's] [PII] has been misused, in the form of an open bank account, or un-reimbursed charges.'" *Aguilar v. Hartford Accident & Indem. Co.,* No. CV 18-8123-R, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019) (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942 at 963). Absent allegations of any actual instances of fraud, misuse, or other harm suffered as a result of the Data Incident, Plaintiffs cannot plead any cognizable injury in connection with the alleged loss of privacy.

Plaintiff Winer's allegations fare no better. Although he asserts that his credit card information was "recently compromised," he pleads no supporting facts whatsoever. CCAC ¶ 56. He does not allege that any fraudulent charges occurred, that he lost money, incurred liability, or suffered any out-of-pocket damages as a result of the alleged compromise. Such conclusory assertions, untethered to any concrete misuse or loss, are insufficient to establish injury.

f.      Increase in Spam

Plaintiffs also allege that they received an increase in spam messages due to the Data Incident, but they provide no factual basis to connect any spam messages to the Data Incident. CCAC ¶¶ 18, 28, 38, 48, 56. Even if true, courts have held that such allegations do not constitute a cognizable injury. *See Travis v. Assured Imaging, LLC*, No. CV-20-00390-TUC-JCH, 2021 WL 1862446, at *8 (D. Ariz. May 10, 2021).

Because Plaintiffs allege no concrete injury-in-fact, their claims fall outside Article III's limited jurisdiction and therefore must be dismissed under Rule 12(b)(1).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

2.       *Plaintiffs Have Not Experienced Any Injury-in-Fact That is Fairly Traceable to Wisner's Conduct*

Article III requires "'a causal connection between the injury and the conduct complained of – the injury has to be fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'" *Greenstein v. Noblr Reciprocal Exch.*, No. 4:21-cv-04537-JSW, 2022 WL 17418972, at *4 (N.D. Cal. Dec. 5, 2022) (quoting *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted)). Plaintiffs do not plausibly allege that any injury they claim is traceable to Wisner's conduct, as opposed to the intervening acts of third parties.

The CCAC does not plead facts showing how the incident occurred or identifying any act or omission by Wisner that caused Plaintiffs' alleged harm. Instead, Wisner's investigation shows the Data Incident resulted from a breach in SonicWall's systems that permitted threat actors to gain access to valid accounts and passwords compromised in the SonicWall data security incident. *See* Schmalz Decl. ¶ 5. Plaintiffs therefore do not allege injury arising from Wisner's own systems, conduct, or security controls. Instead, the alleged access occurred through third-party software that Wisner did not operate, develop, or control. Even if Plaintiffs were to dispute the precise pathways, they must still plead facts plausibly tying their injuries to Wisner's challenged conduct. They do not.

Plaintiffs attempt to bridge this gap by alleging that Wisner owed a duty "to protect all Private Information in its possession, including not sharing information with other entities who maintained sub-standard data security systems." CCAC ¶ 117. But alleging a duty does not plead traceability. Plaintiffs still must plausibly allege that Wisner's challenged conduct caused their injury—not that a downstream vendor suffered an independent breach. The CCAC does not allege facts showing Wisner controlled SonicWall's security, caused SonicWall's credential compromise, or could have prevented SonicWall's breach. Conclusory assertions about "vetting"

- 10 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

cannot substitute for allegations establishing a causal chain to Wisner. The Schmalz Declaration instead demonstrates that Wisner's involvement was multiple steps removed. Wisner retained ProTek IT Solutions, Inc. ("ProTek IT") to provide maintenance for its hardware and software. Schmalz Decl. ¶ 3. ProTek IT in turn used SonicWall, which provides cloud backup service. *Id*. Wisner's investigation revealed that the earliest evidence of threat actor activity in the Wisner network environment occurred on the SonicWall SSL VPN on October 8, 2025. *Id*. ¶ 5. At that point, the threat actor successfully authenticated to the SSL VPN using a valid account and password compromised in the SonicWall data security incident. *Id*. Those facts confirm that the alleged access stemmed from compromised credentials arising out of SonicWall's own breach, not from Wisner's conduct.

This case fits comfortably within decisions rejecting attempts to impose liability on an entity based solely on a third-party provider's breach. In *Ortiz v. Perkins & Co.*, No. 22-cv-03506-KAW, 2022 WL 16637993, at *6–7 (N.D. Cal. Nov. 2, 2022), the court dismissed where the plaintiff failed to plead facts connecting the defendant's own conduct to the third-party provider's compromise, explaining that a plaintiff "cannot simply rely on the breach of Defendant's vendor" to establish the defendant's negligence. *Id.* at *5. Plaintiffs' traceability allegations fail for the same reason.

At bottom, Plaintiffs do not allege that Wisner operated or controlled the SonicWall software that was breached, that Wisner caused the credential compromise, or that Wisner had the ability to prevent or remediate SonicWall's independent security failure, or that Wisner otherwise breached some duty through its vendor's use of SonicWall. Wisner is therefore several rungs removed from the SonicWall incident, and Plaintiffs' alleged injuries depend on the intervening acts of a third party not before the Court. Where, as here, an alleged injury, "is the result of the independent action of some third party not before the court," Article III traceability is absent. *Lujan*, 504 U.S. at 560–61.

Baker & Hostetler LLP
Attorneys at Law
San Francisco

- 11 -

## B.      Plaintiffs Fail to State a Claim under Rule 12(b)(6)

Even if the Court were to conclude that some Plaintiff can satisfy Article III, the CACC should still be dismissed because each cause of action fails independently under Rule 12(b)(6).

### 1.      *Plaintiffs Fail to Establish Proximate Cause*

As an initial matter, every claim in the CCAC fails on causation. Plaintiffs do not plead a plausible link between (i) their provision of information to Wisner, (ii) the incident, and (iii) any concrete injury. Plaintiffs do not plead facts showing that any act or omission by Wisner proximately caused the alleged harm. Plaintiffs must plead facts showing that their alleged injury is proximately caused by Wisner's conduct—not by mere speculation that Wisner's systems were somehow "inadequately protected," or "under-protected." CCAC ¶¶ 2, 6.

In short, Plaintiffs' theory depends on a chain of speculation: that a third-party compromise occurred, that it yielded data that could be used to access Wisner's systems, that Plaintiffs' particular information was taken, and that it was then misused in a way that caused them harm. The CCAC pleads no facts that make that chain plausible, and it pleads no facts showing that Wisner had control over the third-party systems at issue. Rule 12(b)(6) does not permit liability to rest on a "vendor breached, therefore downstream customer pays" theory untethered to well-pleaded facts.

This defect is consistent with, and reinforced by, *Ortiz* mentioned above. *Ortiz* rejected claims arising from a data incident where the plaintiff failed to plead facts connecting the defendant's own conduct to a third-party provider's compromise. *Ortiz,* 2022 WL 16637993, at *6-7. The court made clear that downstream harm allegations do not substitute for well-pleaded facts showing that the defendant's actions were the proximate cause of the breach. *Id.*

### 2.      *Plaintiffs' Negligence and Negligence Per Se Claims Fails*

The elements of negligence under California law are: "(a) a legal duty to use

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Evan F. v. Hughson United Methodist Church*, 10 Cal. Rptr. 2d 748, 752 (Cal. Ct. App. 1992).

### a.     Plaintiffs Fails to Allege Cognizable Injury

Plaintiffs' negligence claim independently fails because they have not pleaded a cognizable injury. *See, e.g., In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1141 (C.D. Cal. 2021). Even if Plaintiffs could satisfy the lower Article III standing threshold, this Court should still dismiss their negligence claims under the higher standard for pleading compensable damages under Rule 12(b)(6). *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) ("Although [plaintiff] alleged sufficient injury-in-fact to support standing, whether the allegations adequately alleged compensable damages is a different question."). As discussed above, Plaintiffs do not allege actual injury as a result of the Data Incident.

### b.     Economic Loss Rule

Even if Plaintiffs could establish a duty was owed here (they cannot), California's economic loss rule provides "in the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed" from being recovered in tort. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 at 967, *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).

As discussed above, Plaintiffs have alleged no injury, let alone personal injury arising out of the Data Incident. *See supra* section IV(A). Nor do they allege that "some other common law exception to the" economic loss doctrine applies here. And to the extent Plaintiffs claim that the alleged compromise of their PII constituted "property damage," they are wrong—as explained above, courts have routinely

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

rejected such arguments where, as here, Plaintiffs do not allege that they "attempted to sell [their] PII, that [they] would do so in the future, or that [t]he[y] was foreclosed from entering into a value for value transaction relating to [their] PII, as a result of . . . [the defendant's] conduct." *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013). Thus, Plaintiffs' negligence claim necessarily fails.

### c.     The Failure to Timely Disclose Theory Does Not Save the Claim

Plaintiffs also allege that they and the Class members suffered harm from the timing of notification. CCAC ¶¶ 154-156. But there is no freestanding common law tort duty to provide breach notification. (*See, e.g., Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 2017 WL 1551330, at *2 (S.D. Ill. May 1, 2017) (statutory notification duties did not imply a common law negligence duty); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (declining to create a negligence claim based on allegedly inadequate or untimely notice).)

Moreover, even if Plaintiffs could premise some theory on notice timing, they must plead causation and resulting injury attributable to the alleged delay—i.e., what they would have done differently with earlier notice and how that would have prevented a present, non-speculative injury. The CCAC does not allege any concrete misuse of Plaintiffs' information, and it alleges no action Plaintiffs could have taken that would have prevented any alleged loss. To the extent the Legislature has imposed notification obligations in specific contexts, that statutory scheme underscores why courts should be cautious about recognizing a duplicative common law negligence duty untethered to statutory elements and remedies. Plaintiffs' notice-timing allegations therefore do not salvage the negligence claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

### 3. *Plaintiffs Fail to State Claims for Breach of Implied Contract and Implied Covenant of Good Faith and Fair Dealing*

Notwithstanding the failure of Plaintiffs' breach of implied contract and breach of the implied covenant of good faith and fair dealing claims on the basis of lack of damages (*see Salami v. Los Robles Reg'l Med. Ctr.*, 103 Cal. App. 5th 1023, 1027 (2024)), it also fails because the CCAC does not plead facts showing mutual assent to any contract term requiring Wisner to provide a particular level of cybersecurity (or to guarantee the security of downstream contractors). To find an implied contract, "there must be an offer; there must be an acceptance; the acceptance must be in the terms of the offer; it must be communicated to the offeror; there must be a mutual intention to contract; [and] there must be a meeting of the minds of the parties." (*Krottner v. Starbucks Corp.* 406 F.App'x 129, 131 (9th Cir. 2010).) Plaintiffs plead only that Defendant "entered into implied contracts for [Wisner] to implement data security adequate to safeguard and protect the privacy" of Plaintiffs' and Class Members' private information. CCAC ¶ 165. That is a conclusion, not a pleaded set of contract terms, and it is untethered to any alleged writing, disclosure, policy, or course of dealing identifying what cybersecurity standard was supposedly part of the bargain.

Nor does the CCAC plead consideration or a "data security" bargain: it does not allege Plaintiffs paid a price premium for cybersecurity, that any portion of amounts paid was allocated to data security, or that Plaintiffs would have bargained differently had they known a specific security measure would not be used. Nor do Plaintiffs allege any specific representation they saw, relied upon, or would have acted differently upon—facts that are typically necessary to transform a generalized expectation of privacy into an enforceable, mutual contract term. Absent facts showing a meeting of the minds on a concrete term and its breach, the implied contract claim fails.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -

###### 4. *Plaintiffs Fail to State a Claim for Violating the UCL*

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999) (citation and quotations omitted). The UCL creates three kinds of unfair competition—unlawful, unfair, or fraudulent. *Id*. Plaintiffs rely on the unlawful prong as they claim that the alleged conduct violates the CRA, CCPA, FTC Act and California common law. CCAC ¶ 181. Plaintiffs also allege unfair conduct duplicative of their negligence claims based on generic and conclusory allegations related to Wisner's data security practices. CCAC ¶ 180.   However, in addition to a lacking cognizable injury, Plaintiffs' UCL claim fails for other reasons.

###### a. Plaintiffs Lack UCL standing

UCL standing requires Plaintiffs to have "'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204). This standing requirement is substantially stricter than Article III's and requires Plaintiffs to establish a "causal connection" between Wisner's alleged violation and a loss of money or property. *Id*. at 1204. Plaintiffs' allegations fall fatally short.

Plaintiffs claim in conclusory fashion that because of Wisner's alleged violations of the CRA, CCPA, FTC Act, and California common law, they were "injured and lost money or property, including the price received by [Wisner] for its goods and services, monetary damages from fraud and identity theft, and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft and loss of value of their Private Information." CCAC ¶ 184. But Plaintiffs do not describe what "services" they are referring to or how much those "services" cost. Because Plaintiffs fail to allege that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

they paid any money to Wisner for any service, they "cannot have been injured by overpayment." *Tamraz v. Bakotic Pathology Assocs., Inc.*, No. 22-cv-0725-BAS-WVG, 2022 WL 16985001, at *6 (S.D. Cal. Nov. 16, 2022) (citation omitted); *see also Gardiner v. Walmart Inc.*, No. 20-cv-04618-JSW, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021) (dismissing UCL claim for lack of standing because "[p]laintiff's allegations do not establish that the cost of the goods he purchased at Walmart included some amount attributable to data security as required to support his benefit-of-the-bargain theory"). In addition, as explained above, any claim that Plaintiffs' PII constitutes money or property fails. *Supra* IV(A). While Plaintiffs generally allege that their PII is valuable (*see* CCAC ¶ 123), they do not allege that they would ever sell their information or that Wisner impaired their ability to do so. *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929 WHA, 2021 WL 4553772, at *2 (N.D. Cal. Oct. 5, 2021) (no standing where "plaintiffs have provided market valuation for the personal information but have not specified how the data breach impaired their ability to participate in that market"). "This lack of specificity is fatal," and Plaintiffs' UCL claim should be dismissed. *Id.*

        b.       <u>Plaintiff Fails to Establish Lack of an Adequate Remedy at Law</u>

To adequately state a UCL claim of any kind, Plaintiffs must establish that they "lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL[.]" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Courts post-*Sonner* have dismissed UCL claims, like this one, that are grounded in seeking monetary relief. *See, e.g., Schertz v. Ford Motor Co.*, No. CV 20-03221 TJH (PVCx), 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020). Because "there is nothing in the [CCAC] to suggest that monetary damages would not make Plaintiffs or the putative class whole," Plaintiffs may not bring equitable claims. *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC (GJSx), 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020). And equitable claims based on factual

- 17 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

predicates that are duplicative of claims for damages may not be pled as an alternative. *See Madrigal v. Hint, Inc.*, No. CV 17-02095-VAP (JCx), 2017 WL 6940534, at *4 (C.D. Cal. Dec. 14, 2017).

### 5. *Plaintiffs Fail to State a Claim for Violation of the CCPA*

Plaintiffs' claim under the CCPA is not viable for multiple, independent reasons. Wisner is not subject to suit under the CCPA's private right of action because Defendant is not a "business" as defined in the statute in connection with the data at issue here, and even if it were, Plaintiffs fail to plead facts demonstrating that Wisner did not implement reasonable security procedures and practices.

### a. Wisner is Not a "Business" under the CCPA

The CCPA's private right of action is narrowly circumscribed. It provides that "[a]ny consumer whose nonencrypted and nonredacted personal information … is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices … may institute a civil action" for damages or injunctive relief. Cal. Civ. Code § 1798.150(a)(1). By the statute's plain terms, liability is imposed (if at all) based on an alleged failure to maintain reasonable security—not on alleged timing of notice. Plaintiffs' "106 days" notice allegations arise under separate notice provisions (Cal. Civ. Code § 1798.82), which Plaintiffs plead as part of their CRA theory, not as an element of § 1798.150.

The CCPA defines a "business" in detail at Cal. Civ. Code § 1798.140(d). In essence, a business is a for-profit entity that collects consumers' personal information, determines the purposes and means of processing that information, does business in California, and meets certain size thresholds (such as exceeding $25 million in revenue). The statute distinguishes businesses from other entities such as "service providers." A "service provider" is defined as an entity that processes personal information on behalf of a business and to which the information is

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 18 -

disclosed for a business purpose pursuant to a contract. Cal. Civ. Code § 1798.140(ag).

Wisner falls into the "service provider" category in relation to the data at issue. The CCAC itself describes Defendant as a law firm and alleges that Plaintiffs Hartman, Rutledge, Denney, Wieand, and Hernandez provided information to Wisner "in connection with the services [they] received from Defendant." CCAC ¶¶ 12, 22, 32, 42, 65, 78. Plaintiff Winer alleges that his private information "was stored and handled on Defendant's network systems." CCAC ¶ 51. In other words, any personal data Wisner received was received on behalf of—and to serve—its clients (for example, in litigation or legal counseling). The firm did not collect Plaintiffs' information for its own commercial purposes or decide to use their data for an independent business purpose unrelated to providing legal services, and Plaintiffs make no allegation to the contrary. The fact that Wisner may be a for-profit entity or may meet a revenue threshold (CCAC ¶ 190) is not sufficient, standing alone, to plead that Wisner "determines the purposes and means" of processing the information within the meaning of the statute.

Because Wisner was acting as a service provider, the CCPA's private right of action in § 1798.150 does not apply. Plaintiffs conclusorily plead that "Defendant is a 'business' under [the CCPA] because Defendant is a 'corporation … [that] had annual gross revenues in excess of twenty-five million dollars'" CCAC ¶ 190. But a law firm representing clients and handling information provided in connection with those services is not alleged to be determining the ultimate purposes for which the information is used; it is using the information to perform requested services for a client. The CCPA's text and structure make clear that service providers are not the intended defendants under § 1798.150 on these allegations. Plaintiffs' CCPA claim thus fails as a matter of law, because § 1798.150 does not authorize a suit against Defendant under these circumstances.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-01017- SVW-AS

b.      Plaintiffs Fail to Plausibly Plead Necessary Allegations

Additionally, Plaintiffs' CCPA claim is deficient because Plaintiffs offer only boilerplate allegations that Defendant's security was inadequate. See CCAC ¶ 189. Courts routinely dismiss CCPA claims based on allegations like Plaintiffs', which are conclusory and devoid of factual detail. *See, e.g., In re Waste Mgmt. Data Breach Litig.*, No.21CV6147 (DLC), 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022) (dismissing CCPA claim where complaint "[did] not plausibly allege that [defendant] breached  its 'duty to implement and maintain reasonable security procedures and practices'"); *Maag  v. U.S. Bank, Nat'l Ass'n*, No. 21-CV-00031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim based on "unsupported allegations that [plaintiff's personal information] was compromised because [defendant] did not 'implement and maintain reasonable security procedures and practices,' 'failed to effectively monitor its systems for security vulnerabilities,' and had 'lax security'"); *Griffey v. Magellan Health Inc.,* 562 F.Supp. 3d 34, 57 (D. Ariz. 2021) (dismissing CCPA claim where plaintiff "did not allege sufficient facts to establish how or why [defendant's] systems were inadequate or unreasonable or how or why [defendant] knew or should have known its systems were inadequate or unreasonable."); *Anderson v. Kimpton Hotel & Rest. Group, LLC*, No. 19-cv-01860-MMC, 2019 WL3753308, at *5 (N.D. Cal. Aug. 8, 2019) (similar). Likewise, Plaintiffs' claim should be dismissed.

At bottom, while their allegations are insufficient, Plaintiffs' CCPA cause of action fails because they have sued the wrong party under the statute. Defendant is not a "business" covered by the CCPA's private right of action, but at most a service provider to a business. The Court should dismiss Count V with prejudice for that reason alone, as no amendment can alter Defendant's status or bring it within the narrow scope of § 1798.150.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -

6.    *Plaintiffs Fail to State a Claim for Violating the CRA*

Plaintiffs bring a claim under the CRA, which creates a private right of action for certain customers damaged by untimely breach notifications. *Corona*, 2015 WL 3916744, at \*6–7. Under the CRA, a customer is "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." Cal. Civ. Code § 1798.80(c). Plaintiffs do not clearly allege their relationship to Wisner, instead asserting that "[a]s a condition of being direct customers and/or employees of Defendant, Representative Plaintiffs and Nationwide Class Members provided and entrusted their Private Information to Defendant." CCAC ¶ 167. To the extent any Plaintiff is (or was) an employee, rather than a client/customer, the CRA does not apply. *See Corona*, 2015 WL 3916744, at \*7 (dismissing CRA claim because plaintiffs were former employees—not customers as required under the statute). Thus, Plaintiffs have failed to establish an essential element of their claim.

Even if the CRA applied, Plaintiffs' claim still would fail. Plaintiffs' threadbare allegation that notice was sent after an "unreasonable delay" is insufficient. *See, e.g.*, *Anderson*, 2019 WL 3753308, at \*5 (dismissing CRA claim with similarly deficient allegation of statutory violation); *In re Waste Management Data Breach Litig.*, 2022 WL 561734, at \*7 (same). Further, "proof of damages is a threshold hurdle" for CRA claims. *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-000140GPC-BLM, 2016 WL 6523428, at \*10 (S.D. Cal. Nov. 3, 2016). Plaintiffs offer no specific, nonconclusory allegations that earlier notice would have prevented any concrete misuse or loss; they rely instead on a generalized statement that the alleged delay prevented them "from taking appropriate measures from protecting themselves against harm." CCAC ¶ 200. Plaintiffs also do not allege any monetary damage attributable to the timing of notice (as opposed to the underlying incident itself). The CRA claim should be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 21 -

## V.  <u>CONCLUSION</u>

The CCAC should be dismissed in its entirety. Plaintiffs have not alleged a concrete, particularized injury sufficient to invoke this Court's jurisdiction. And even putting jurisdiction to one side, the CCAC does not plead facts that plausibly establish causation, damages, or the essential elements of any asserted cause of action. Dismissal is warranted under Rules 12(b)(1) and 12(b)(6).

For all the preceding reasons, Wisner respectfully requests that the Court dismiss the Consolidated Class Action Complaint with prejudice.

Dated: May 4, 2026                        **BAKER & HOSTETLER LLP**

By:  */s/ Sean P. Killeen*
     Casie D. Collignon
     Sean P. Killeen

     Attorneys for Defendant
     WISNER BAUM, LLP

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -

## C.D. CAL. L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Wisner Baum, LLP, certifies that this brief contains 6,939 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

*/s/ Sean P. Killeen*
Sean P. Killeen

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -